## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | Civil No. 3:21-cv-1054 (OAW) |
| RANDAL LICARI, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| DOE, et al., | : | |
| *Defendants*. | : | |
| | : | SEPTEMBER 2, 2022 |

### RULING ON DEFENDANTS' MOTION TO DISMISS

Randal Licari ("Plaintiff"), a former inmate at Cybulski Correctional Institution ("Cybulski") in Somers, Connecticut, has filed a civil rights action pursuant to 42 U.S.C. § 1983.  Amended Complaint, ECF No. 22 (hereinafter "Complaint").  Plaintiff alleges deliberate indifference to his health and safety in violation of his Eighth Amendment rights and seeks an award of monetary damages against the following defendants: Dr. Doe, Dr. Clemence, Captain Doe, Lieutenant Ramos, and Correctional Officers ("C.O.s") Shultz, Cowles, Jerry, and VanNostrand.[1]

Defendants have moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Mot. to Dismiss, ECF No. 19-1.  Defendants assert that dismissal is warranted because Plaintiff has not served them in their individual capacities or alleged cognizable Eighth Amendment claims.  *Id.*

---

[1]  The court notes that Defendant VanNostrand is identified in the caption of this case as "Vannostraw" and in the Complaint as either "Vannostein" or "Vannostrain", *see* ECF No. 1 at 7 ¶ 6, but that Defendant, in the instant Motion to Dismiss, spells the name "VanNostrand", *see* ECF No. 19 at 1.  As such, the court throughout this written ruling adopts the "VanNostrand" spelling used by such defendant's own counsel.

The court finds that it would be inappropriate to dismiss Plaintiff's Complaint due to his failure to serve Defendants in their individual capacities. However, because Plaintiff has not alleged facts which could establish a violation of his Eighth Amendment rights, the court hereby **GRANTS** Defendants' motion to dismiss.

## I.      Standard of Review

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). However, when reviewing a motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). The review is confined to the facts alleged in the operative complaint unless the court elects to convert the motion to dismiss to a motion for summary judgment, an action not taken here. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

## II.     Background

On August 15, 2020, while incarcerated under the authority of the Connecticut Department of Corrections, Plaintiff underwent back surgery at UConn Health Facility ("UConn Health").  Am. Compl., Statement of Case at ¶ 1, ECF No. 22.  This surgery has caused Plaintiff lasting and "immeasurable" pain to his lower back and legs.  *Id.* at ¶ 3.  To manage this pain, Plaintiff has often visited UConn Health to receive spinal injections.  *Id.* at ¶¶ 3–4.

On the morning of June 2, 2021, C.O.s Shultz and Cowles transferred Plaintiff from Cybulski to UConn Health for a spinal injection.  *Id.* at ¶¶ 4–5.  Officers Shultz and Cowles were in a hurry this morning because they wanted to conduct another prisoner transport that afternoon to receive overtime pay.  *Id.* at ¶ 5.  Immediately after Plaintiff received his spinal injection, officers escorted Plaintiff back to the transport van and departed to Cybulski.  *Id.* at ¶ 6.  Halfway between UConn Health and Cybulski, Plaintiff informed officers that he could no longer feel his legs or feet.  *Id.* at ¶ 7.  In response, Officer Shultz told Plaintiff to "relax."  *Id.* at ¶ 8.

When Plaintiff arrived at Cybulski, Officers Shultz and Cowles, along with another C.O., Officer Jerry, obtained a wheelchair for Plaintiff.  *Id.* at ¶ 9.  The officers then haphazardly moved Plaintiff from the transport van to his wheelchair.  *Id.*  This rough handling left scratches and "black and blue marks" on Plaintiff's back.  *Id.*

Once in a wheelchair, Plaintiff spoke over the telephone to a Cybulski physician, Dr. Clemence.  *Id.* at ¶ 10.  Apprised of Plaintiff's symptoms, Dr. Clemence determined that Plaintiff should stay in a medical waiting area until feeling returned to his legs.  *Id.*

After Plaintiff waited one and a half to two hours without feeling returning to his legs, Dr. Clemence ordered for Plaintiff to be transported back to UConn Health.  *Id.* at ¶ 11.  Instead of calling for an ambulance, Dr. Clemence permitted Plaintiff to be taken in a transport van.  *Id*.  Plaintiff was again subjected to rough handling while being loaded into and out of the transport van, this time from C.O.s Jerry and VanNostrand .  *Id.* at ¶¶ 12–13.

Upon arriving at UConn Health, Plaintiff was taken to a bed for evaluation.  *Id.* at ¶ 14.  After remaining in bed for four to five hours, feeling returned to Plaintiff's legs.  *Id.* Plaintiff then was returned to Cybulski without further incident.  *Id.*

## III.    Discussion

Section 1983 of Title 42 of the United States Code creates a private federal cause of action against any person, acting under color of state law, who deprives an individual of their federally protected rights.  *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012).  In his amended complaint, Plaintiff asserts that each of the Defendants has incurred §1983 liability by violating his Eighth Amendment rights.  Am. Compl. at p. 2, ¶ 4.

Defendants raise four arguments in support of dismissing Plaintiff's amended complaint.  First, they note that Plaintiff has served Defendants only in their official capacity, and thus they are entitled to sovereign immunity under the Eleventh Amendment.  Mot. to Dismiss at 3–5, ECF No. 19-1.  Second, Defendants argue that Plaintiff's claims against supervisory correctional officers are premised on an unviable theory of *respondeat superior*.  *Id.* at 5-6.  Third, Defendants contend that Plaintiff's claims against non-supervisory correctional officers allege mere negligence which is insufficient

to establish a violation of his Eighth Amendment rights.  *Id.* at 8-9.  Fourth, and finally, Defendants assert that Plaintiff's claims against physicians reflect mere disagreement over treatment which forms an insufficient basis to establish an Eighth Amendment violation. *Id.* at 9-12.

A.  Defendants' Individual and Official Capacities

Plaintiff, thus far, has served each Defendant by serving the Connecticut Office of the Attorney General.  ECF No. 7.  In his complaint, Plaintiff seeks only money damages. Am. Compl. at p. 10, ¶¶ 1–7.  Defendants argue that service through the Attorney General is insufficient to sue them in their *individual* capacities and, because the Eleventh Amendment doctrine of sovereign immunity prohibits actions against state officials in their official capacity for the recovery of money damages, the Complaint should be dismissed. Mot. to Dismiss at 5, ECF No. 19-1.

In *Bogle-Assegai v. Connecticut*, the United States Court of Appeals for the Second Circuit reviewed relevant federal and state service statutes and concluded the Connecticut Office of the Attorney General has authority to accept service on behalf of state officials in their *official*, but not *individual*, capacities.  470 F.3d 498, 507–08 (2006). To serve a Connecticut state official with proper notice of a federal lawsuit, a plaintiff must: (1) personally deliver a summons and complaint; or (2) leave a summons and complaint at the official's dwelling/abode.  *Id.*[2]

---

[2] When the *Bogle-Assegai* Court assessed how plaintiffs lawfully could  serve state officials pursuant to Connecticut state law, it emphasized language within Conn. Gen. Stat. § 52-64 which has since been amended.  *See Bogle-Assegai*, 470 F.3d at 507.  However, Connecticut appellate courts continue to interpret Gen. Stat. § 52-64 as permitting the Office of the Attorney General to accept service on behalf of state officials in their official capacities only.  *See Jan G. v. Semple*, 202 Conn. App. 202, 219 (2021).

Applying *Bogle-Assegai's* precedent, Plaintiff clearly failed to serve Defendants in their individual capacities.  And, since Plaintiff is suing Defendants exclusively in their individual capacities, Defendants are correct in noting that they, effectively, haven't been served at all.  It does not follow though, that Plaintiff's failure to serve Defendants in their individual capacity warrants dismissal of this action at this time.

Federal Rule of Procedure 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant *or order that service be made within a specified time*.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

(Emphasis added).

Rule 4(m) confers this Court with discretion to grant an extension to serve process even without a showing of good cause.  *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007).

In his response to Defendants' motion to dismiss, Plaintiff does not endeavor to argue that he had good cause for failing to serve Defendants in their individual capacities.  Pl.'s Opp., ECF No. 20.  Regardless, several mitigating factors weigh against dismissing the action for Plaintiff's failure to serve Defendants in their individual capacities.

First, Defendants do not argue that their defense was prejudiced in any way by Plaintiff's failure to serve them in their individual capacities.  Mot. to Dismiss at 3–5.  Since Defendants allege no harm, affording Plaintiff an opportunity to "fix [his] service error [would] comport[ ] with the notion that litigation should be resolved on the merits, if

possible.  *Williams v. State of Connecticut*, 3:15-cv-627 (VAB), 2016 WL 4472935, at *6 (D. Conn. August 24, 2016).

Second, the Defendants identified in Plaintiff's lawsuit—all represented by counsel—may have actual knowledge of this action.  *See John v. City of Bridgeport*, 3:14-cv-1484 (RNC), 309 F.R.D. 149, 154 (D. Conn. July 15, 2015) (a defendant's actual notice of claims weighs in favor of discretionarily extending a service deadline).  Counsel, at least, does not assert otherwise in Defendants' motion to dismiss.  Mot. to Dismiss at 3–5.  Moreover, it is reasonable to assume that the Attorney General has informed at least the identified Defendants named in the Complaint.

Third, Plaintiff, a *pro se* litigant, retained the services of a State Marshal to serve Defendants.  And this Marshal provided Plaintiff with "Proof of Service" forms stating: "I served the summons on the Office of the Attorney General, whom is duly authorized to accept service on behalf of the defendant[s] on September 03, 2021."  ECF No. 7 at 2.  In the Second Circuit, a *pro se* prisoner proceeding *in forma pauperis* is "entitled to rely on service by the U.S. Marshals."  *Murray v. Pataki*, 378 Fed. Appx. 50, 52 (2010) (citation omitted).  While Plaintiff's reliance upon service by a retained State Marshal does not constitute *per se* good cause for an extension, it is a factor weighing in favor of a discretionary extension.

Finally, Plaintiff appears to have commenced this action while still serving a criminal sentence in a halfway house.[3]  Thus, Plaintiff's case likely should have gone through an initial screening process required by 28 U.S.C. § 1915A.  *See Jackson v.*

---

[3]     Although the record is not entirely clear on this point, the court draws inferences from information listed on the envelope which Plaintiff used to mail his initial complaint.  *See* ECF. No. 3-1.

*Johnson*, 475 F.3d 261, 264-65 (2007) (Persons serving a criminal sentence at a halfway house are "prisoners" within the meaning of U.S.C. § 1915).[4]   When district courts conduct initial reviews of prisoner complaints, service deadlines typically are established by judicial order, overlooking Fed. R. Civ. Pro. 4(m)'s otherwise standard requirement for plaintiffs to serve defendants within 90 days after a complaint is filed.   *See Fraser v. Caribe*, 20-cv-71 (SVN), 2022 WL 1210720, at *5 n.4 (D. Conn. April 4, 2022).   Since Plaintiff's service deadlines should have been established by an initial review order, this court is not inclined to rigidly enforce Fed. R. Civ. Pro. 4(m)'s 90-day deadline.

In sum, this court declines to dismiss this case on the basis of Plaintiff's improper service.   Had Plaintiff adequately pled causes of action, this court would have granted him additional time to serve Defendants in their personal capacities.

B.   <u>Claims Against Captain Doe and Lieutenant Ramos</u>

Defendants argue that Plaintiff's claims against Captain Doe and Lieutenant Ramos are wholly premised on a theory of supervisory liability, and, therefore, must be dismissed.   Mot. to Dismiss at 5–6.   In opposing dismissal, Plaintiff does not contest the Defendants' characterization of his claims against Captain Doe and Lieutenant Ramos, but, instead, insists that these defendants should be held liable for violations of his Eighth Amendment rights because they were "acting administration at the time of the incident," and "[i]n charge of all decision pertaining to inmates."   Pl.'s Opp. at 7, ECF No. 20.

State officials cannot be held liable for violations of constitutional rights committed by their subordinates based upon a theory of *respondeat superior*.   *See Ashcroft*, 566

---

[4]      While *Jackson* interpreted the term "prisoner" within the meaning of 28 U.S.C. § 1915, rather than 28 U.S.C. § 1915A, 28 U.S.C. §1915 and 28 U.S.C. § 1915A use identical language to define a "prisoner." *Compare* 28 U.S.C. §1915(h) *with* 28 U.S.C. § 1915A(c).

U.S. at 676.  Rather, liability for a "violation must be established against the supervisory official directly."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Thus, in the specific context of an Eighth Amendment deliberate indifference claim, a plaintiff "must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it."  *Id.* at 616.

When identifying the parties to his amended complaint, Plaintiff asserts that Captain Doe, "is the person responsible for all decisions made at the facility during his/her shift," and that Lieutenant Ramos, "is in charge of all inmate movement and decisions made at" Cybulski.  Am. Compl. at p. 3, ¶¶ 6–7.  In outlining the factual allegations of his Complaint, Plaintiff fails to mention either Captain Doe or Lieutenant Ramos.  *Id.* at p. 5–10.  At no point in the Complaint does Plaintiff contend that Captain Doe or Lieutenant Ramos were aware of Plaintiff's transports to and from UConn Health.  *Id.*

Absent any allegation of their personal involvement in this matter, Plaintiff seeks to hold Captain Doe and Lieutenant Ramos liable for the actions of their subordinates based entirely upon a theory of supervisory liability.  Accordingly, this court hereby dismisses Plaintiff's claims against Captain Doe and Lieutenant Ramos.

### C. Claims Against C.O.s Shultz, Cowles, Jerry, and VanNostrand

Plaintiff asserts that the C.O.s named in this suit violated his Eighth Amendment rights by roughly transporting him from a van to a wheelchair and vice versa.  Am. Compl at p. 9, ¶¶ 17–20.  In Plaintiff's view, Defendants should have obtained assistance from experienced medical personnel, or perhaps called an ambulance, rather than attempt such transport themselves.  *Id.* at p. 9, ¶ 18.  Although Plaintiff claims that Defendants'

rough handling scratched and bruised his back, he does not allege that Defendants intentionally inflicted these injuries. *Id.* at p. 6–7.

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. While the Eighth Amendment protects prisoners from unnecessary inflictions of serious harm, not every injury which a prisoner sustains at the hands of a correctional officer constitutes a cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). To violate the Eighth Amendment, a correctional officer must act with "deliberate indifference" to a prisoner's health or safety. *Id.* at 834.

While mere negligence on the part of a correctional officer could expose him or her to liability through state tort laws, it will not support a finding that he or she violated the Eight Amendment. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). Before a correctional officer can be said to have violated the Eight Amendment, it must be shown that they acted with a criminally reckless state of mind. *Farmer*, 511 U.S. at 839–40.

In their motion to dismiss, Defendants assert that Plaintiff's claims against non-supervisory correctional officers "sound in negligence," and, thus, do not plead a violation of his constitutional rights. Mot. to Dismiss at 8. This court agrees. Plaintiff has not alleged that Officer Shultz, Cowles, Jerry, or VanNostrand intentionally hurt him. Rather, he contends that these officers "should have known better than to touch an inmate who just had a spinal injection." Pl.'s Opp. at 8. Be that as it may, Defendants did not appear to exhibit callous indifference to Plaintiff's well-being in moving him into, and out of, a wheelchair and a prisoner transport vehicle.

Taking Plaintiff's Complaint at face value, no reasonable person would characterize the Defendants actions as on par with a criminally reckless assault. And that, essentially, is the level of misconduct which Plaintiff must show to prevail in this § 1983 suit. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ("Deliberate indifference is a state of mind that is the equivalent of criminal recklessness.") (quotations and citations omitted). Absent further allegations regarding a mental state "more blameworthy than negligence," *id*, Plaintiff's claims against Officers Shultz, Cowles, Jerry, and VanNostrand hereby are dismissed.

D. <u>Claims Against Dr. Doe and Dr. Clemence</u>

As to Dr. Doe (a UConn Health physician) and to Dr. Clemence (a Cybulski physician), Plaintiff contends that each was deliberately indifferent to his health and safety needs. Plaintiff specifically faults Dr. Doe for not waiting 15 minutes from his spinal injection before authorizing his discharge to Cybulski, Am. Compl. at p. 8, ¶ 16, and Dr. Clemence for not ordering ambulance transport back to UConn Health. *Id.* at p. 9, ¶ 19.

Defendants argue that Plaintiff's physician claims are unviable because they reflect nothing more than a disagreement over treatment decisions. Mot. to Dismiss at 10. Dismissal also is warranted, Defendants contend, because there is no causal link between the treatment decisions of which Plaintiff complains and a worsening of any medical condition. *Id.* at 11.

The court disagrees with Defendants' latter argument. Plaintiff does not allege that Defendants' treatment exasperated or prolonged the numbness caused by his spinal injection. Rather, Plaintiff seeks remedy for pain and suffering related to his transport back and forth from UConn Health while in a non-ambulatory state. Had Dr. Doe waited

15 minutes to discharge Plaintiff from UConn Health, then, presumably, the numbness to Plaintiff's lower extremities would have exhibited while he was still there, and he would not have been discharged to Cybulski until he regained feeling in his legs.  And had Dr. Clemence ordered an ambulance, then Plaintiff would not have been loaded into a transport van by non-medical professionals.  Thus, there is a clear causal link between the decision-making which Plaintiff challenges and the injuries which he alleges.

Defendants' initial argument is on more sound footing.  "It is well-established that mere disagreement over [ ] proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Chance v. Armstrong*, 143 F.3d 698, 703 (1998).

Here, Plaintiff does not allege that Doctors Doe or Clemence ignored his need for treatment.  Rather, he takes issue with their treatment decisions.  In this vein, it *may* be that Dr. Doe should have waited an additional 15 minutes before discharging Plaintiff to Cybulski.  And it *could* be that Dr. Clemence should have ordered an ambulance to transport Plaintiff to UConn Health.  But this court does not "sit as a board of medical review," and is ill-equipped to make informed rulings on these matters.  *See Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987).

The Complaint does not allege that the doctors made poor treatment decisions, or any other facts that support a finding of deliberate indifference.  The alleged malpractice—not rising to the level of criminally reckless decision-making—is insufficient to establish a violation of Plaintiff's constitutional rights.  *See Smith*, 316 F.3d at 184 ("[T]he Eighth

Amendment is not a vehicle for bringing medical malpractice claims.")  Accordingly, this court hereby dismisses Plaintiff's claims against Doctors Doe and Clemence.

## IV.     Conclusion

Defendants' motion to dismiss (ECF No. 19) hereby is **GRANTED**, and leave to further amend the complaint is denied as futile.  *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d  Cir.  2014) (leave  to amend a complaint may  be  denied  when  amendment  would  be futile).  The claims asserted against each Defendant are **DISMISSED**.  The clerk is directed to terminate this case.

**IT SO ORDERED** this 2nd day of September, 2022, at Hartford, Connecticut.

/s/ *Omar A. Williams*
Omar A. Williams
United States District Judge